**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| T. William Short, et al., | ) | No. CV-10-8237-PHX-GMS |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Noble Mountain Community Association, et al., | ) | |
| Defendants. | ) | |

Pending before the Court are Motions to Dismiss filed by the following Defendants: Noble Mountain Community Association ("NMCA") (Doc. 15), the County of Apache and numerous county employees ("County Defendants") (Doc. 24), and The Honorable Donna Grimsley (Doc. 26). Plaintiffs have filed a Motion to Strike NMCA's motion to dismiss (Doc. 17), a Motion for Summary Judgment against NMCA (Doc. 18), a Motion for Summary Judgment against Judge Grimsley and the County Defendants (Doc. 26), a Motion to Strike the County Defendants' motion to dismiss (Doc. 28), and a Motion to Enjoin NMCA from defending the litigation (Doc. 29). For the reasons stated below, all of Plaintiffs' motions are denied, Defendants' motions are granted, and the complaint is

dismissed.[1]

**BACKGROUND**

Plaintiffs' amended complaint contains six hundred and six pages arranged in four thousand, two hundred and twenty-six paragraphs. The bulk of the complaint covers issues stemming from two series of events, a 2004 lawsuit filed by Plaintiffs against NMCA, and Plaintiffs's ongoing interaction with law enforcement and county officials.

The first series of events detailed in the complaint involve a previous lawsuit between some of the parties in this matter. In 2004, Travis Short filed a lawsuit against NMCA, a residential development of sixty-five lots in Apache County, Arizona, in which Plaintiffs own lots. In the course of that litigation, NMCA filed compulsory counterclaims against Travis Short, and a third-party complaint against Cheryl Short and Jason Bluth.[2] The Superior Court entered default judgment against Cheryl Short and Bluth, issuing permanent injunctions directing them to, among other things, comply with the provisions of NMCA's covenants, conditions and restrictions ("CC&Rs"). On July 10, 2008, the Arizona Court of Appeals affirmed the judgment of the trial court. *Noble Mountain Community Ass'n v. Short*, 2008 WL 2752346 (Ariz. App. July 10, 2008).[3]

The second series of events detailed in the complaint involves interaction between Plaintiffs and local law enforcement. Plaintiffs claim that on August 22, 2004, Apache County Sheriffs' deputies investigating a dog bite entered their yard without a warrant, pointed their weapons, and arrested them for various animal control charges. Travis Short

---

[1] NMCA's request for oral argument is denied because oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Bluth was originally a Plaintiff in this action but withdrew. (Doc. 38).

[3] Another permanent injunction was issued in November of 2009 against Plaintiff Travis Short, who apparently continued the litigation under the name of "Tyler Steimel." (Doc. 15, Ex. B). On November 8, 2010, the Arizona Supreme Court denied Plaintiffs petition for review and granted attorney's fees to NMCA. (Doc. 15, Ex. C).

- 2 -

further claims that he was stopped while driving his truck and charged once with driving with a fictitious license plate and once with driving without registered plates. He was also charged with threatening to accuse the Apache County Treasurer of a crime. Travis Short was tried on all of the above charges in March of 2006. (Doc. 9 ¶¶ 138,156,179,186). Short was not convicted of any of the offenses in question. The claims against the County Defendants also include allegations that law enforcement has failed to investigate complaints that Plaintiffs have filed, and that Plaintiffs have been denied access to public records.

Twelve of Plaintiffs' twenty-four counts directly involve the state court litigation, including claims that the original court had no jurisdiction (Counts One and Two), NMCA's corporate board did not authorize it to bring the counterclaims (Count Three), the original claim constituted fraud upon the court because a supporting affidavit was signed by NMCA's attorney, not by a party (Count Four and Five), NMCA failed to abide by state court rules of procedure (Count Six), the counterclaim contained no cognizable cause of action (Count Seven), and the opposing party bribed the trial court judge in order to procure a favorable result. (Count Eight). Moreover, Plaintiffs claim that because the judge in the state court case did not have jurisdiction to hear the case, she ought not be afforded judicial immunity (Count Nine), and that an affidavit submitted by NMCA's counsel contained false statements, rendering the entire proceeding an abuse of process and a denial of due process (Count Ten). Additionally, Plaintiffs contend that the state court counterclaim was the product of a conspiracy among various defendants (Count Eighteen), and that the counterclaim constituted defamation. (Count Twenty-four).

Six of Plaintiffs' claims relate to their interactions with local law enforcement. They claim that the County Attorney failed to investigate an assault, declined to prosecute a trespasser, and cited Travis Short for building and living in a barn on his property, and that these acts deprived Plaintiffs of their rights to equal protection under the Fourteenth Amendment. (Count Eleven). They claim that the entry onto their property to investigate the dog bite constituted a Fourth Amendment violation, that the subsequent prosecutions were malicious, and that the constitutional violations constituted a conspiracy against Plaintiffs by

1  County Defendants. (Counts Thirteen, Fourteen, and Fifteen). They further claim that the
2  intrusions and prosecutions constituted malicious abuse of process and intentional denial of
3  civil rights. (Counts Sixteen and Seventeen). They sue for relief of their constitutional
4  depravation under 41 U.S.C. § 1983 (2006). (Doc. 9 at 550).

Finally, Plaintiffs bring a number of additional claims. They allege that they have been denied access to public records in violation of Arizona Revised Statutes ("A.R.S.") § 39-121 by the County Defendants. (Count Twelve). They claim that NMCA can be liable for constitutional violations because it qualifies as a "state actor." (Count Nineteen). They claim that all defendants are liable for intentional infliction of emotional distress and for negligent infliction of emotional distress. (Counts Twenty and Twenty-One).[4] They allege that NMCA is liable for breach of contract because it is itself in violation of the CC&Rs, and that NMCA is liable for "Malfeasance" because it did not make its governing documents available to Plaintiffs. (Counts Twenty-Two and Twenty-Three).

NMCA has filed a Motion to Dismiss, contending that the complaint fails to state a claim, that the previous lawsuit is *res judicata* to the claims, and that the Court lacks subject-matter jurisdiction in this case. (Doc. 15). Additionally, NMCA states that it has not been properly served, and asks for attorneys' fees. (*Id.*). The County Defendants have moved to dismiss all counts of the complaint as to them because the amended complaint fails to state a claim, Plaintiffs have failed to serve County Defendants with a notice of claim for the state claims, and the claims are barred by a one-year statute of limitations on suing state officers. (Doc. 24). Judge Grimsley has filed a motion to dismiss because she has not been served, she is protected by judicial immunity, the complaint fails to state a claim, the suit is barred by the *Rooker-Feldman* doctrine prohibiting de facto appeals of state court decisions to federal court, the claims are barred by the statute of limitations, the suit is barred by the Eleventh Amendment, Plaintiffs failed to serve a Notice of Claim, and the claims are barred by

---

[4] These claims are both numbered "Count 20" in the complaint. The complaint contains no "Count 22." The Court has renumbered the second "Count 20" as "Count 21" and the complaint's "Count 21" as "Count 22."

- 4 -

collateral estoppel. (Doc. 36).

Plaintiffs have moved to strike NMCA's motion, claiming that it is unsigned and that they received only one copy instead of two as they allege is required by Rule 11 of the Federal Rules of Civil Procedure. (Doc. 17). They move for summary judgment against NMCA because they claim that NMCA's failure to respond to Requests for Admissions within 30 days of being sent such requests constitutes an admission of Plaintiffs' allegations. (Doc. 18). They filed a similar motion for summary judgment against Judge Grimsley and the County Defendants, stating that a failure to respond to Requests for Admissions constitutes an admission of Plaintiffs' allegations. (Doc. 26). They have moved to strike the County Defendants' motion because only one copy was mailed. (Doc. 28). They have moved to enjoin NMCA from defending this lawsuit, alleging that NMCA was dissolved by the Arizona Corporation Commission in 2009. (Doc. 29). They filed a motion for a Default Judgment against Judge Grimsley, which was denied when the Clerk of Court determined that "service of Defendant Grimsley may be insufficient." (Docs. 27, 37).

**DISCUSSION**

**I.      Legal Standards**

     **A.      Procedure, Jurisdiction, and the Statute of Limitations**

The Federal Rules of Civil Procedure require that a Plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.

"The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The defense of lack of subject-matter jurisdiction may be raised at any time by the parties or the Court, and if the court determines "that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added); *see also Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

The Court has subject-matter jurisdiction over cases involving federal questions

pursuant to 28 U.S.C. § 1331,[5] which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A court may exercise pendent jurisdiction over a state law claim when the relationship between the state and federal claims "permits the conclusion that the entire action before the court comprises but one constitutional case." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (internal quotation omitted). Moreover, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," and unless it is justified by "judicial economy, convenience and fairness to litigants" the court "should hesitate to exercise jurisdiction over state claims." *Id.* at 726. As provided by statute, courts may exercise supplemental jurisdiction over parties against whom a Plaintiff only lodges state law claims, so long as those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2006). When a district court "dismisses the federal claim[s] leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. n. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

In Arizona, "[a]ll actions brought against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Arizona Revised Statutes ("A.R.S.") §12-821. Claims filed against public entities or public employees more than one year after a cause of action accrues shall be dismissed when "the failure to timely file the notice was due to conduct of the claimant and . . . his conduct was not 'excusable.'" *Pritchard v. State*, 163 Ariz. 427, 432, 788 P.2d 1178, 1183 (1990). In Section 1983 claims, "state statute[s] of limitations . . . are binding rules of law." *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 484 (1980).

**B.     Failure to State a Claim**

---

[5] There is no issue of diversity jurisdiction in this case. No party disputes that all Plaintiffs and Defendants are Arizona citizens.

- 6 -

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**II. Analysis**

    **A. Plaintiffs' Complaint and Motions**

At over six hundred pages, and containing more than four thousand paragraphs, Plaintiffs' complaint is neither "short" nor "plain," and is therefore in violation of the Federal Rules. *See* FED. R. CIV. P. 8. Count Ten by itself is four hundred and twenty-three pages long, and contains two thousand, eight hundred and thirty-eight paragraphs. (Doc. 9 ¶¶ 860–3698). These facts alone could merit dismissal of the action, because "[a]lthough [the Court] construe[s] pleadings liberally in their favor, pro se litigants are bound by the rules

of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Nevertheless, in order to resolve the dispute promptly, the court will consider the complaint in its entirety. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.").

In keeping with a generous reading of the rules, the Court likewise declines to strike motions filed by Defendants merely because one copy, rather than two, was sent to two Plaintiffs who reside at the same address and who undisputedly received the briefings.[6] *See id.* Moreover, in response to Plaintiff's allegation that NMCA's motion to dismiss lacks a signature, the Court notes that under the local rules, "[t]he log-in and password required to submit documents to the ECF System constitute the Registered User's signature on all electronic documents filed with the Court for purposes of Rule 11 of the Federal Rules of Civil Procedure." LRCiv 5.5(g). NCMA's motion is in compliance with Rule 11; Plaintiffs' motions to strike are denied. (Doc. 17, 28).

In arguing that NMCA no longer exists, Plaintiff has attached a "Certificate of Dissolution" dated October 23, 2009, to a motion to enjoin NMCA from defending this litigation. The Court may take judicial notice of NMCA's corporate filings with the Arizona Corporation Commission, which are "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991). Those filings show that NMCA is current in its corporate filings through 2011. *See* Corporation Annual Report & Certificate of Disclosure, Noble Mountain Community Association, *available at* http://www.azcc.gov. NMCA is a currently registered corporation, and Plaintiffs motion to enjoin it from defending this lawsuit is therefore denied.

Plaintiffs move for summary judgment against NMCA and the County Defendants

---

[6] To the extent that Plaintiffs argue that Bluth should also have received copies of Defendants' motions, the Court notes that Bluth is not a party in this action.

- 8 -

because they allege that NMCA and the County Defendants did not respond to Requests for Admission that Plaintiffs claim to have submitted. (Docs. 18, 26). Parties have not held a Rule 26(f) scheduling conference, discovery has not commenced, and motions to dismiss are pending. Any requests for admissions purportedly submitted were therefore premature. These motions are therefore dismissed.

### B. Motions to Dismiss

In three motions to dismiss, Defendants argue that the complaint, individual parties, and individual counts should be dismissed for various reasons. The Court will consider applicable arguments as it proceeds through the complaint.

#### 1. Counts One through Ten, Eighteen, and Twenty-Four: State Court Lawsuit

The bulk of Plaintiffs' complaint, including the over-four-hundred-page Count Ten, involves the lawsuit Travis Short filed in state court and the counterclaim filed by NMCA against Cheryl Short and Bluth. Principally, Plaintiffs claim that the state court lacked jurisdiction to hear the counterclaim against them, an issue that Plaintiffs raised, litigated, and lost in state court and on appeal. *See Noble Mountain Community Ass'n v. Short*, 2008 WL 2752346 (Ariz. App. July 10, 2008). Additionally, they argue that NMCA was not authorized to bring the complaint, that NMCA's attorney filed a false affidavit, and that NMCA or its attorney bribed the judge in the matter. The only federal law cited in the more than five hundred pages that make up these Counts are sporadic references to due process, definitions of general concepts, and admonitions that a court may not rule on a case in which it lacks jurisdiction. For example, Plaintiffs cite a Tenth Circuit case for the proposition that fraud upon the court "is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (cited in Doc. 9, ¶ 393). They cite a Third Circuit case for the proposition that "there is no discretion to ignore lack of jurisdiction." *Joyce v. U.S.*, 474 F.2d 215 (3d Cir. 1973) (cited in Doc. 9 ¶ 335). In neither instance do Plaintiffs explain why a state court's alleged failure to find that it lacked

1  jurisdiction, or a state fraud committed on a state court in a state court proceeding, would
2  present a federal question. The claims regarding the lawsuit are purely state claims, over
3  which this Court has no jurisdiction absent supplemental or pendent jurisdiction.

4  Moreover, this Court cannot exercise pendent jurisdiction over the claims regarding
5  the state court adjudication. In the counts of their complaint that arise under federal law,
6  Plaintiffs allege that state law enforcement officers denied them their federal constitutional
7  rights. Those law enforcement officers were not parties to the lawsuit between NMCA and
8  Plaintiffs, and the related criminal charges were not related to, and are not mentioned in, the
9  decision in the lawsuit against NMCA. The federal claims in Plaintiffs' lawsuit and the
10 multiple challenges to the state court rulings do not "derive from a common nucleus of
11 operative fact." *Gibbs*, 383 U.S. at 725. It would not be proper to exercise pendent
12 jurisdiction over these claims. This Court does not have jurisdiction to rule on the claims
13 regarding the state court lawsuit.

14 Plaintiffs make periodic invocations of their right to due process, and elsewhere claim
15 that NMCA qualifies as a "state actor," giving a constitutional dimension to the claims
16 against NMCA.[7] Even if these arguments were sufficient to grant the Court federal question
17 jurisdiction, all counts involving the previous litigation would be dismissed. Under the
18 *Rooker-Feldman* doctrine, the federal district court is not the proper forum to seek reversal
19 of an adverse decision of the state trial court: "If the decision was wrong, that did not make
20 the judgment void, but merely left it open to reversal or modification in an appropriate and
21 timely appellate proceeding. Unless and until so reversed or modified, it would be an
22 effective and conclusive adjudication." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415
23 (1923). As the Ninth Circuit has noted, "federal district courts have no authority to review
24 the final determinations of a state court in judicial proceedings." *In re Gruntz*, 202 F.3d 1074,
25 1078 (9th Cir. 2000) (internal quotations omitted). Although the Supreme Court has clarified
26 that the *Rooker-Feldman* doctrine occupies "narrow ground," it has also emphasized that the

---

[7] The merits of the state actor claim are discussed below in Section II.B.2.

doctrine applies to cases brought by those "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Co.*, 544 U.S. 280, 284 (2005).

There are a number of exceptions to the *Rooker-Feldman* doctrine. The Ninth Circuit has held, for example, that *Rooker-Feldman* is inapplicable "where the complaining party did not have a full and fair opportunity to litigate a claim in state court or where the state court demonstrated inability or unwillingness to protect federal rights." *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir. 1985) (vacated on other grounds by *Robinson v. Ariyoshi*, 887, F.2d 215 (9th Cir. 1989). This exception, however, is applicable only when a state court "had explicitly refused to hear federal constitutional claims," not when the state court had considered and rejected those claims, or when those claims were not raised but could have been. *Partington v. Gedan*, 961 F.2d 852, 865 (9th Cir. 1992).

When a state court decision is made solely on procedural grounds, and the court does not consider the merits of the underlying claim, *Rooker-Feldman* does not bar federal litigation. *See Whiteford v. Reed*, 155 F.3d 671, 674 (1998) (*Rooker-Feldman* did not bar federal case when state appeal from administrative decision was denied because the appellant "had violated Pennsylvania's rules of appellate procedure"). Finally, *Rooker-Feldman* does not bar cases that "are based, in whole or in part, on alleged extrinsic fraud on the state court." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). Extrinsic fraud is defined as "conduct which prevents a party from presenting his claim in court." *Id.* (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)). In *Kougasian*, the extrinsic fraud alleged consisted of "submitting [a] false declaration to the state court . . . at the last minute and refusing to supply the telephone number or address of the declarant, thereby preventing [plaintiff] from deposing or otherwise questioning him." *Kougasian*, 359 F.3d at 1140.

None of these exceptions apply to the instant case. Plaintiffs had the opportunity to bring any federal constitutional claims in their original suit, but they chose not to. They had a full opportunity to litigate their claims, and even appealed to the Court of Appeals and to

the Arizona Supreme Court.[8] Although the original decision at the state court level was a default judgment, a default judgment is a decision on the merits for the purposes of *Rooker-Feldman*. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860 (9th Cir. 2008) (default judgment bars federal review even when parties argue it could have been based on procedural grounds when "the parties did not present a procedural argument before the state court").

The bulk of Claim Ten involves a supposedly fraudulent affidavit submitted by opposing counsel in connection with NMCA's application for a Temporary Restraining Order. This allegation, however, does not meet the "extrinsic fraud" standard sufficient to merit an exception to the *Rooker-Feldman* doctrine under *Kougasian*. Plaintiffs raised the allegation of the supposedly fraudulent affidavit in state court, whereas the plaintiffs in *Kougasian* claimed that they were denied the opportunity of a fair adjudication in state court because of the false declaration, of which they were unaware at the time. In Plaintiffs' state court proceedings, the Arizona Court of Appeals considered the allegations regarding the affidavit, and concluded as follows:

> Arizona Rule of Civil Procedure 65(d) requires that a party seeking a temporary restraining order without notice provide a verified complaint or affidavit showing that immediate and irreparable injury would result before the adverse party could be heard and provide a statement by counsel as to the efforts to provide notice or the reasons why notice should not be required. The affidavit submitted by NMCA's counsel explained the reasons why the application was sought without notice and asserted that NMCA believed that Cheryl and Bluth would continue to damage the property. The affidavit provided in support a letter from Bluth in which Bluth stated that he believed he was not bound by the CC & Rs. Contrary to the assertions of Cheryl and Bluth, NMCA's counsel did not admit falsity of his statement but explained that his statements regarding the conduct of Cheryl and Bluth simply mirrored those in the verified complaint.
> *Noble Mountain*, 2008 WL 2752346, at *4 n.3

---

[8] Plaintiff Travis Short's appeal was dismissed because at the time of his appeal, no final order had been entered as to him. Nevertheless, he originally had the opportunity to litigate his claim in state court. In *Whiteford*, the *Rooker-Feldman* doctrine was held inapplicable when a plaintiff had been denied the right to file a state-court appeal of an administrative action. 155 F.3d at 674.

All claims regarding the state court litigation, therefore, are dismissed. (Counts One–Ten, Eighteen, Twenty-Four).

### 2. Federal Claims: Counts Eleven, Fourteen, Fifteen, Seventeen, Nineteen

Plaintiffs make five constitutional claims. They alternately refer to these claims as violations of the constitution or "violations of 42 U.S.C. § 1983." In fact, section 1983 "is not itself a source of substantive rights" but only provides a cause of action "for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Properly, Plaintiffs are seeking relief for constitutional violations through Section 1983. Since pro se litigants' pleadings are held "to less stringent standards than formal pleadings drafted by lawyers," the Court will consider the 1983 claims as though they were properly pled. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation omitted).

Counts Eleven, Fourteen, Fifteen, and Seventeen are barred by the one-year statute of limitations for claims against public entities or public employees. A.R.S. § 12-821. Plaintiff claims in Count Eleven that the actions giving rise to his Equal Protection claim took place in October of 2004, May 22, 2005, the summer of 2005, and an unstated period "shortly after" a period "in 2008." (Doc. 9 ¶¶ 3699–3737). Even assuming that the actions in 2008 took place at the end of the year, and that the actions that took place shortly afterwards took place a year later, the statute of limitations would have expired in November 2010, before Plaintiffs first filed their complaint on December 8, 2010. (Doc. 1). Claim Fourteen, while captioned "Refusing or Neglecting to Prevent," in fact refers to alleged Fourth Amendment violations by deputies of the Apache County Sheriffs Department who, according to Plaintiffs, drove onto Plaintiffs' property without a warrant in August of 2004, improperly asked for the vaccination records of Travis Short's dog's, and threatened him with deadly force. (Doc. 9 ¶¶ 58–80). The statute of limitations on this Count expired in 2005. A.R.S. § 12-821. Count Fifteen names numerous Apache County officials and alleges only that they deprived Plaintiffs' Fourteenth Amendment rights through a "concerted unlawful and malicious conspiracy." (Doc. 9 ¶ 3765). Plaintiffs put forth no facts regarding

their interaction with law enforcement or county officials after the criminal trial on multiple charges in Mach 2006. (Doc. 9 ¶ 138). As pleaded, therefore, Count Fifteen is a due process challenge to actions preceding or during that trial. At the very latest, the statute of limitations regarding any constitutional violations associated with the search, arrest, and trial expired in 2007, long before the complaint was filed. A.R.S. § 12-821. Claim Seventeen alleges an "Intentional Violation of Civil Rights," and claims that the County Defendants violated Plaintiffs' civil rights while acting under color of state law. This Count duplicates the conspiracy count, and appears also to refer to criminal proceedings against Plaintiffs. To the extent that it also refers to actions described in Count Eleven, the statute of limitations has expired.

Plaintiffs have included nothing in their six-hundred page complaint that suggests any reason that the statute of limitations ought to be tolled. They were actively engaged in litigation during the period since the alleged wrongful acts took place, and have demonstrated that they are capable of availing themselves of the court system. Their § 1983 claims are therefore barred by the statute of limitations. *See Tomanio*, 446 U.S. at 484.

Count Nineteen alleges that NMCA qualifies as a state actor because of its powers as a homeowners association. The Count makes no factual claims regarding NMCA's actions, but only describes its powers. The claim is apparently included in order to lend a constitutional dimension to claims against NMCA that otherwise arise only under state law. "State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (internal quotations omitted). The Supreme Court has found that when a corporation owns a town in its entirety, the corporation's rules governing behavior in that town qualify as "state action." *See Marsh v. Alabama*, 326 U.S. 501 (1946). It later clarified that this principle applies only when a corporation owns an entire town that is open to the public; that is, "when that property has taken on *all* the attributes of a town, *i.e.*, residential buildings, streets, a system of sewers, a sewage disposal plant and a business block on which business places are situated."

*Hudgens v. NLRB*, 424 U.S. 507, 516 (1976) (emphasis in original; internal quotation omitted). Although the Ninth Circuit and the state courts of Arizona have only considered whether homeowners' associations are state actors in unpublished decisions, they both have concluded that such associations are not state actors. *See Dreaming Summit Homeowners Ass'n v. Wassef*, 2008 WL 21202534 (Ariz. App. May 15, 2008); *Snowdon v. Preferred RV Resort Owners Ass'n*, 379 Fed. Appx. 636, 637 (9th Cir. 2010) (homeowners' association is not a state actor because it merely "provided an assortment of basic amenities and simple services to its paying members, all within the fenced-in confines of its private property"). Despite submitting a complaint longer than six-hundred pages, Plaintiffs have failed to allege that NMCA contains "all the attributes of a town," including sewage disposal services or a business district. *Hudgens*, 424 U.S. at 516. NMCA is not a state actor, and breach of contract claims against it are not federal claims.

Four of Plaintiffs federal claims were filed after the applicable statute of limitations, while the fifth fails to state a claim. All five of the federal claims are dismissed.

### 3. Remaining Claims: Counts Twelve, Thirteen, Eighteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three

In their remaining claims, Plaintiffs either fail to state a claim or state a claim only under state law. In Count Twelve, they argue that they were denied public records in violation of A.R.S. § 39-112. (Doc. 9 ¶ 3738–3741). In Count Thirteen they argue that they were the victims of malicious prosecution, a state common-law tort. In Count Eighteen, Plaintiffs allege that the previous lawsuit by NMCA and the actions by the County Defendants constituted civil conspiracies. "A civil conspiracy is not actionable in Arizona." *Pankratz v. Willis*, 155 Ariz. 8, 12, 744 P.2d 1182, 1186 (Ariz. App. 1987) (citing *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966)). Plaintiffs' emotional distress claims, Count Twenty and Twenty One, are torts grounded solely in state law. *See Patton v. First Fed. Sav. and Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978); *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 373, 93 P.3d 1086, 1089 (App. 2004). Count Twenty-Two, breach of contract, is also a state claim. Count Twenty-Three,

while captioned "Malfeasance," is in fact a claim that NMCA has failed to offer its records for inspection in compliance with A.R.S. § 10-11602. It too, is a state law claim.

When a district court "dismisses [federal claims] leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). This Court has no jurisdiction over Count Twelve, Count Thirteen, Count Eighteen, Count Twenty, Count Twenty-One, Count Twenty-Two, or Count Twenty-Three. They are dismissed.

### 4. Other Defenses

Although the Court dismisses most of the federal claims because they were filed after the applicable statute of limitations, it notes that other defenses have been offered that would also adequately serve to dismiss substantial parts, if not all, of these claims. Plaintiffs sue prosecutors for bringing charges against them, but prosecutors are protected by absolute immunity from civil suit. *Imbler v. Pachtman*, 424 U.S. 409 (1976). Likewise, Judge Grimsley was acting in her judicial capacity and is protected by absolute immunity. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Plaintiffs' contention that Judge Grimsley lost judicial immunity because Plaintiffs allege her court lacked personal jurisdiction to rule over them is without support in the law; moreover, jurisdiction was deemed proper by the Court of Appeals when Plaintiffs appealed. *See Noble Mountain*, 2008 WL 2752346, at *4. Plaintiffs' Equal Protection claim that prosecutors failed to bring charges against those Travis Short believed had committed a crime is likewise without merit—prosecutors are afforded broad discretion to determine which crimes to investigate and which charges to bring. *See Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973) (federal court cannot order state prosecutors to conduct investigation and prosecution even when federal court has found that the State "has the duty" to do so). Even were the federal issues timely, Plaintiffs would not be entitled to relief on many, if not all, of these claims.

### C. Attorneys' Fees

Pursuant to Arizona law, a court may award attorneys' fees against any party who

"[b]rings or defends a claim without substantial justification." A.R.S. § 12-349. Plaintiffs have filed a 600-page complaint that asks the federal court revisit claims lost by Plaintiffs at the state court level and on appeal, to address alleged wrongs well past applicable statutory deadlines, and to resolve purely state law claims. In the state court action, attorneys' fees were awarded against Plaintiffs. Plaintiffs have brought this action "without substantial justification" NMCA is entitled to attorneys' fees. The Court will grant reasonable attorneys' fees and costs upon compliance with Federal Rule of Civil Procedure 54(d) and LRCiv 54.2.

## CONCLUSION

Plaintiffs' federal claims against law enforcement officers stem from actions that took place no later than 2006 and are therefore not timely. Their claim that NMCA is a state actor for purposes of the Fourteenth Amendment fails. The Court cannot exercise jurisdiction over the remaining pendent state law claims. It cannot exercise jurisdiction over the challenge to the earlier state-court lawsuit in any event, because that claim does not arise from the same nexus of material fact as the federal claims. To the extent that Plaintiffs bring any federal claims in their challenge to the earlier lawsuit, those claims are barred by the *Rooker-Feldman* doctrine.

**IT IS THEREFORE ORDERED:**

1. Defendant NMCA's Motion to Dismiss and Request for Sanctions and Fees (Doc. 15) is **granted**.

2. The County Defendants' Motion to Dismiss (Doc. 24) is **granted**.

3. Judge Grimsley's Motion to Dismiss (Doc. 36) is **granted**.

4. Plaintiffs' Motions to Strike (Docs. 17, 28) are **denied**.

5. Plaintiffs' Motions for Summary Judgment (Docs. 18, 26) are **denied**.

6. Plaintiffs' Motion to Enjoin NMCA (Doc. 29) is **denied**.

7. The Court will grant NMCA its reasonable attorneys' fees and costs upon compliance with Federal Rule of Civil Procedure 54(d) and LRCiv 54.2.

8. The Clerk of Court shall **terminate** this action.

DATED this 14th day of February, 2012.

*G. Murray Snow*
G. Murray Snow
United States District Judge